UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 20 mj 2151-Rus

UNITED STATES OF AMERICA

vs.

YORGAN ARNALDO RAMOS TERAN,

    Defendant.

_____/

## CRIMINAL COVER SHEET

1.    This matter did not originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle).

2.    This matter did not originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard).

    Respectfully submitted,

    ARIANA FAJARDO ORSHAN
    UNITED STATES ATTORNEY

BY:    /s/ JEK
    JONATHAN E. KOBRINSKI
    Court ID No. A5501893
    99 N. E. 4th Street
    Miami, Florida 33132-2111
    TEL (305) 961-9074
    FAX (305) 530-7976
    jonathan.kobrinski@usdoj.gov

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Yorgan Arnaldo Ramos Teran,<br><br>Defendant(s) | Case No. 20 mj 2151-Reid |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 29, 2020__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 49 U.S.C. § 46307 | Violating National Defense Airspace |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Scott J. McDonough, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __01/31/2020__

*Judge's signature*

City and state: __Miami, Florida__ Hon. Lisette M. Reid, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Scott J. McDonough, being duly sworn, depose and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), having been so employed since January 2001. As a Special Agent, my duties include the investigation of violations of the United States Code. I am currently assigned to the FBI Miami Field Office, where I am the hazardous evidence response team leader as well as the counter-UAS (unmanned aircraft system) team leader. I am familiar with the laws concerning and the operation of unmanned aerial systems. I am also an FAA certificated commercial pilot for single-engine airplanes and helicopters, and a holder of an FAA Remote Pilot Certificate.

2. I make this affidavit in support of an arrest warrant for Yorgan Arnaldo Ramos Teran ("RAMOS TERAN").

3. Based on the facts set forth in this affidavit, I submit there is probable cause to believe that RAMOS TERAN violated Title 49, United States Code, Section 46307 by knowingly and willfully violating national defense airspace, that is, flying an unmanned aircraft system (UAS) within a temporary flight restriction (TFR) zone.

4. The information contained in this affidavit is based upon my personal knowledge, as well as knowledge, information and documentation that I obtained from other law enforcement officers and civilian witnesses who have first-hand knowledge of the events described herein. Because this affidavit is submitted for the limited purpose of establishing probable cause, it does not contain all of the information known to me concerning this investigation, but contains only facts necessary to establish probable cause for the instant request.

## DEFINITIONS

5. Title 14 ("Aeronautics and Space"), Code of Federal Regulations, Section 1.1 defines the following terms used in this affidavit:

   a. "Aircraft" means a device that is used or intended to be used for flight in the air.

   b. "Unmanned aircraft" means an aircraft operated without the possibility of direct human intervention from within or on the aircraft.

   c. "Small unmanned aircraft" means an unmanned aircraft weighing less than 55 pounds on takeoff, including everything that is on board or otherwise attached to the aircraft.

   d. "Small unmanned aircraft system" (small UAS) means a small unmanned aircraft and its associated elements (including communication links and the components that control the small unmanned aircraft) that are required for the safe and efficient operation of the small unmanned aircraft in the national airspace system.

## BACKGROUND AND APPLICABLE LAW

6. The Federal Aviation Administration (FAA) is an agency within the United States Department of Transportation responsible for the control and use of navigable airspace within the United States. The FAA created the National Airspace System (NAS) to protect persons and property on the ground, and to establish a safe and efficient airspace for civil, commercial, and military aviation. In the FAA Modernization and Reform Act of 2012, the FAA was charged with safely integrating unmanned aircraft systems (UAS), commonly referred to as "drones," into the NAS.

7. The FAA offers a Remote Pilot Certificate program (Part 107), which is designed to establish an individual's understanding of the regulations, operating requirements, and procedures for safely flying drones. To obtain the Remote Pilot Certificate, the individual must

pass an aeronautical knowledge test that covers, among other topics, airspace classification and operating requirements, and flight restrictions affecting small unmanned aircraft operation.

8. Title 49 ("Transportation"), United States Code, Section 40103(b)(3) requires the Administrator of the FAA, in consultation with the Secretary of Defense, to establish areas in the airspace the Administrator decides are necessary in the interest of national defense; and by regulation or order, restrict or prohibit flight of civil aircraft that the Administrator cannot identify, locate, and control with available facilities in those areas. A temporary flight restriction (TFR) is a regulation that temporarily restricts certain aircraft from operating within a defined area in order to protect persons or property in the air or on the ground.

9. Pursuant to § 40103(b)(3), on January 22, 2020, the FAA issued a TFR that prohibited all unmanned aircraft from operating within a defined geographical zone within Miami Beach without prior approval from the FAA.[1] Pursuant to § 40103(b)(3), the FAA classified the airspace within this TFR as "National Defense Airspace" in NOTAM (written notification) 0/6428.

10. Title 49, United States Code, Section 46307 prohibits a person from knowingly or willfully violating 49 U.S.C. § 40103(b)(3), or a regulation prescribed or order issued under § 40103(b)(3).

## FACTS ESTABLISHING PROBABLE CAUSE

11. On or about January 29, 2020, at approximately 8:20 p.m., a small UAS was observed flying in the vicinity of Ocean Drive and 8th Street, in Miami Beach, Florida, an area

---

[1] This TFR, and other TFR's, were issued as part of a comprehensive security complement designed to protect and secure the events leading up to and including Super Bowl 54. This particular TFR extended from approximately 5th Street on its southern border to the Julia Tuttle Causeway on the northern border, with Biscayne Bay on the western border and the Atlantic Ocean on the eastern border. The TFR was in effect on January 29, 2020 from 2 p.m. until 11 p.m.

3

within the boundaries of the TFR. As a result, law enforcement searched for and located the pilot of the UAS. This individual was identified as RAMOS TERAN.

12. RAMOS TERAN was interviewed by law enforcement and FAA safety inspectors. RAMOS TERAN admitted he piloted the small UAS that was observed violating the TFR. He further admitted he held a Remote Pilot Certificate and showed it to the interviewers. RAMOS TERAN admitted that he was aware of the TFR, which prohibited drone flights. In order to fly his UAS in the TFR, RAMOS TERAN stated that he had to select within its commercial software that he had authorization to fly in the TFR, even though he did not have such authorization. RAMOS TERAN claimed that he believed he had the authority to fly because he was able to unlock his UAS, but admitted that he did not seek or receive authority or approval from the FAA to fly within the TFR. I further submit that this supposed belief is inconsistent with the training associated with the Remote Pilot Certificate program.

13. RAMOS TERAN used his cellular telephone to show the interviewers a video that he captured using the UAS. Based on the video, it is clear that RAMOS TERAN flew the UAS in the TFR, with a flight path that took the UAS directly over crowds of people who were gathered at an event associated with Super Bowl 54, and that the flight last several minutes spanning multiple blocks within the TFR.

**[this space is intentionally left blank]**

## CONCLUSION

14. Based on the foregoing facts, I respectfully submit there is probable cause to believe RAMOS TERAN has violated Title 49, United States Code, Section 46307 by knowingly and willfully violating national defense airspace.

Scott J. McDonough, Special Agent
Federal Bureau of Investigation

Subscribed and sworn before
me on January 31, 2020

HONORABLE LISETTE M. REID
United States Magistrate Judge